## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

IN RE: TOMMY F. ROBINSON,
     CAROLYN ROBINSON, DEBTORS       CASE NO. 2:05-BK-13915 M

TOMMY F. ROBINSON AND
CAROLYN B. ROBINSON                         APPELLANTS

V.                  CASE NO.  2:09CV00177 JMM

WILDLIFE FARMS, II, LLC,
BILL THOMPSON AND
BOYD BOTHWELL                         APPELLEES

### ORDER

Pending before the Court is an appeal from the September 23, 2009 Order of the United

States Bankruptcy Court for the Eastern District of Arkansas issued by United States Bankruptcy

Judge James M. Mixon in appellants's bankruptcy case.[1]

The history of this case is set forth below:

Ag-Pro Farms of Arkansas ("Ag-Pro Farms") is a corporation owned by [Tommy]
Robinson and his family. Ag-Pro Farms owned a one-third interest in a
partnership called Wildlife Farms II ("Wildlife Farms") which in turn owned a
2,500-acre farm in Monroe County, Arkansas. The remaining partners of Wildlife
Farms were DBJ Investments, LLC and B & L Thompson Investments, LLC.

---

[1]Appellants and appellees agree that this Court has jurisdiction over the appeal pursuant
to 28 U.S.C. § 158.

Wildlife Farms loaned Ag-Pro Farms $175,000.00 secured by Ag-Pro Farms'
interest in Wildlife Farms. The Circuit Court of Monroe County found Ag-Pro
Farms in default on this loan and ordered Ag-Pro Farms' one-third interest in
Wildlife Farms sold unless the judgment was paid within 10 days ("state court
case I").

Wildlife Farms negotiated separate six-month Wetland Reserve Easement Option
Contracts ("easement option contract") with the United States which, if exercised,
would have allowed the United States to impose a wildlife easement on the
2,500-acre farm in Monroe County. This first easement option contract originated
on August 9, 2004 and expired without being exercised in February of 2005. The
second easement option contract originated in March of 2005, and was amended
in May of 2005. The existence of the first easement contract option was not
disclosed to the state court or to the Robinsons during the course of state court I.

On September 3, 2004, before a final judgment could be entered in state court
case I, Ag-Pro Farms filed a voluntary Chapter 11 petition for bankruptcy (Case
No. 2:04-bk-20447) listing as one of its assets a one-third interest in Wildlife
Farms. Roy C. Lewellen represented AG-Pro in state court case I, but not in its
bankruptcy proceeding.

Ag-Pro Farms consented to an order granting relief from the automatic stay
brought about by the bankruptcy to permit foreclosure on the property by Wildlife
Farms. This occurred on December 27, 2004. Ag-Pro Farms' interest was sold to
Wildlife Farms in January of 2005. Upon a motion by Ag-Pro Farms, its
bankruptcy case was converted to a Chapter 7, declared a no-asset case, and
closed on June 1, 2005.

In May of 2005, several months after Ag-Pro Farms' interest in Wildlife Farms
had been foreclosed, the final easement option contract was negotiated. This last
easement option contract was exercised in July of 2005 and closed in August of
2005 resulting in Wildlife Farms receiving $1,635,074.00. Robinson claims
one-third interest in this amount based upon his one time one-third interest in
Wildlife Farms.

On March 25, 2005, Robinson and his wife, Carolyn, were placed in separate
involuntary Chapter 7 bankruptcies by two of their creditors, Bill Thompson and
Boyd Bothwell.  FN1.  The Robinsons contested the involuntary bankruptcies.
Following a hearing held by Bankruptcy Judge James G. Mixon on September 28,
2005, they were ordered Chapter 7 debtors.

> FN1. Two of Robinson's business entities, Brinkley Truck &
> Tractor Towing & Recovery, Case No. 2:04-bk-20495, and
> Brinkley Truck & Tractor, Inc., Case No. 2:04-bk-20448, which
> were in voluntary Chapter 7 bankruptcies were consolidated with
> the two involuntary Chapter 7 bankruptcies of Robinson and his
> wife and all four cases were administratively consolidated for
> convenience of administration into the case of In re Robinson,
> Case No. 2:05-bk-13915.

Wildlife Farms, Thompson, and Rothwell ("the creditors") filed objections to the
Robinsons' discharges contending that debts owed to them were nondischargeable
pursuant to 11 U.S.C. § 523(a)(4)  FN2  and that the Robinsons' discharges should
be denied pursuant to 11 U.S.C. § 727(a)(2), (3), (4), and (5).  FN3.  In April of
2006, the Robinsons filed an answer and counterclaim in which they, again, raised
a claim of fraud based upon the failure of the creditors to inform them, or the state
court, of the easement option contract. The counterclaim contained allegations
that Rothwell and Thompson had committed perjury at the September 28, 2005
hearing on the Robinsons' contested involuntary bankruptcies.

> FN2. Under 11 U.S.C. § 523(a)(4), a debt is nondischargeable if it
> is for "fraud or defalcation while acting in a fiduciary capacity".
>
> FN3. Under 11 U.S.C. § 727, a discharge is denied if the debtor
> hindered a creditor, concealed or destroyed information, made a
> false oath, or failed to explain any loss of assets.

In May of 2006, Thompson and Rothwell notified Campbell, Robinson's attorney,
that they intended to file a motion for sanctions based upon the representations
made in the counterclaim that Thompson and Rothwell had committed perjury.
They provided Campbell a copy of the motion and exhibits which included a
transcript of Rothwell's and Thompson's testimony. Campbell was extended the
twenty-one day safe harbor provided by Bankruptcy Rule 9011.

On June 9, 2006, Judge Mixon approved the trustee's settlement of several of the
debtors' outstanding lawsuits over the debtors' objections including the objection
regarding the creditors failure to inform the Robinsons, or the state court, of the
easement option contract ("global settlement"). This global settlement occurred
after Robinson and Campbell met with the trustee to inform him that the United
States had exercised its easement option contract resulting in a payment to
Wildlife Farms. The trustee investigated the matter and settled with these creditors
for $10,000.00 all issues which were, or could have been raised, including the
issue related to the failure to disclose the easement option contract. In approving

the global settlement, the bankruptcy court specifically found that the debtors lacked standing to object to the settlement because any interest they had in Wildlife Farms belonged to the trustee. There was no appeal of this order.

On July 12, 2006, Thompson filed a motion for contempt against Robinson and his sons for committing an alleged assault and battery against him in retaliation for his effort to assist a potential purchaser of property from Carolyn Robinson. The bankruptcy court held a hearing on the matter and issued an order on July 28, 2006 which stated:

> [T]he Court hereby enjoins and restrains Tommy F. Robinson and any persons acting for or at his behest from engaging in or taking any actions to interfere in any way with the administration of these jointly administered bankruptcies or the sale of assets of the bankruptcy estates by the Trustee, including but not limited to any action to coerce, intimidate, harass, hinder or threaten the Trustee, any creditors, attorneys or parties in interest in these jointly administered bankruptcies until their completion or closure.

*In re Robinson*, Case No. 2:05-bk-13915, Doc. # 187.  No appeal was taken from this order.

On August 22, 2006, Campbell entered a stipulation in which she agreed to dismiss the counterclaim and admitted that she, and her clients, were mistaken in their assertion that Rothwell and Thompson had committed perjury.

The 2,500 acre farm owned by Wildlife Farms was scheduled to be sold at auction on December 19, 2006. On December 18, 2006, Lewellen, at Robinson's request, filed a lawsuit in Monroe County Circuit Court ("state court action II") alleging that Thompson and Rothwell committed fraud by failing to disclose to Judge Bentley E. Story the easement option contract. Lewellen also filed a notice of *lis pendens* in the Circuit Court of Monroe County, Arkansas. The auction was cancelled because the title insurance company would not issue a title policy.

On December 21, 2006, Wildlife Farms, Rothwell, and Thompson filed a motion for an order of contempt contending that Robinson's and Lewellen's actions in filing state court action II and the *lis pendens* notice violated the bankruptcy court's July 28, 2006 order.  FN4.

> FN4. Rothwell, Thompson and Wildlife Farms argued that Robinson's and Lewellen's actions were designed (1) to interfere

with the trustee's administration of the debtors' bankruptcies; (2) to
interfere with the trustee's sale and settlement of the litigation
assets of the debtors; and (3) to coerce, intimidate, damage and
harass them as creditors.

In January of 2007, Campbell and Lewellen filed a motion for relief from stay
seeking permission from the bankruptcy court for state court action II to proceed.
It was the debtors' contention that their complaint in state court action II would
persuade the state court to vacate its finding of foreclosure in state court action I
which would result in the debtors' prior ownership of Ag-Pro Farm being
reinstated. It was argued that once their ownership was reinstated, the Robinsons
would have access to the money generated from the easement option contract by
way of Ag-Pro Farms' ownership of the one-third interest in Wildlife Farms. The
Robinsons contended that they could have then repaid the $175,000.00 debt owed
to Wildlife Farms resulting in Thompson and Rothwell not being able to place the
Robinsons in Chapter 7 bankruptcies.

The bankruptcy court held a hearing on February 26, 2007, on the motion for
contempt and the motion for relief from stay. The court denied the motion for
relief from stay, and found Robinson and Lewellen in civil contempt based upon
their filing of state court action II, and remanded them to the custody of the United
States Marshall until they dismissed state court case II and withdrew the *lis
pendens* notice.  FN5. At the conclusion of the hearing the court announced its
intention to impose criminal sanctions against Robinson and Lewellen with a fine
of $5,000.00 each and by assessing attorney's fees and damages including the
costs to auction the property. Robinson and Lewellen were released from
incarceration on February 27, 2007, after they dismissed state court case II and
Lewellen withdrew the *lis pendens* notice. On February 28, 2007, the court denied
the motion for relief from stay by a written order. There was no appeal from this
order.

> FN5. The court entered its written order finding Robinson and
> Lewellen in civil contempt on February 27, 2007.

The creditors filed a motion for sanctions against Campbell and Lewellen on
March 15, 2007 based upon the pleadings filed in the motion for relief from stay
and the response to their motion for contempt. On April 4, 2007 a second motion
for sanctions was filed against Campbell regarding statements she made in open
court at the February 26, 2007 hearing.

On April 17, 2007, Judge Mixon issued an order pursuant to Federal Rule of
Bankruptcy Procedure 9020 and 9033(b) finding Robinson in criminal contempt

and ordered sanctions consisting of (1) Robinson's payment of the defendants' attorney's fees and costs in state court II; (2) a fine of $5,000.00; and (3) incarceration for six months which was suspended as long as Robinson did not interfere with the administration of any of the bankruptcy estates in any manner including assault, battery, threats, and filing frivolous pleadings, motions, and lawsuits. The court found that Lewellen was not in criminal contempt of its previous order and that Lewellen's actions would be more appropriately considered pursuant to the pending motion for sanctions.

On April 20, 2007, the court held a hearing on the motions for sanctions against Lewellen and Campbell, and ordered sanctions against Lewellen consisting of Lewellen's payment of the defendants' attorney's fees and costs in state court case II  FN6  and damages related to the cancelled sale of the farm in Monroe County. Judge Mixon did not assess any damages or fees against Campbell at the hearing.

> FN6. These sanctions were assessed against Robinson and
> Lewellen, jointly and severely.

In May of 2007, after a trial on the merits of the objections to the Robinson' discharge, Judge Mixon found that the Robinsons had made false statements and omissions knowingly, intentionally, and with fraudulent intent while under oath. The bankruptcy court denied Tommy Robinson's and Carolyn Robinson's discharge pursuant to § 727(a)(4)(A).

On August 29, 2007, Judge Mixon granted the two motions for sanctions filed by the creditors. On the first motion, the court set aside its assessment against Lewellen for the damages related to the cancelled sale of the farm. The court then assessed sanctions against both counsel by requiring Lewellen and Campbell to pay legal fees and costs incurred in the course of defending the motion for relief from stay and for prosecuting the first motion for sanctions  FN7  and by holding Campbell and Lewellen jointly and severally liable for payments of $10,000.00 to Thompson and $10,000.00 to Rothwell. On the second motion, the court ordered Campbell to pay attorney's fees and expenses generated in response to her counterclaim, including but not limited to fees related to the warning letter, original motion for sanctions, settlement negotiations of the original motion, second motion for sanctions, and the hearing on the second motion for sanctions, and $2,000.00 to Rothwell and $2,000.00 to Thompson.

> FN7. The bankruptcy court made this amount jointly and severally
> liable with any previous assessment for the same fees and costs
> assessed against debtor Tommy Robinson.

Counsel for the creditors subsequently filed an application for fees incurred in

defending the motion for relief from stay and for prosecuting the first motion for sanctions. The fees totaled $23,846.50, the costs totaled $571.45, and the expenses incurred as a result of the cancellation of the auction amounted to $110,000.00.  FN8.  A hearing was held on the application for fees on April 20, 2007 which was followed by a written order dated October 12, 2007 in which Judge Mixon awarded judgment to Wildlife Farms against Robinson in the amount of $102,817.81 for expenses of the auction pursuant to the February 26, 2007 and April 17, 2007 orders, and judgment to Wildlife Farms, Thompson, and Rothwell against Tommy Robinson in the amount of $24,417.95 for attorney's fees and costs pursuant to these same orders.

> FN8. Robinson appealed this judgment in Case No. 2:07MC0001 which has been consolidated with Case No. 4:07CV00489.

On that same date, pursuant to the August 29, 2007 order, the court awarded judgment to Wildlife Farms, Thompson, and Rothwell against Campbell and Lewellen, jointly and severally, in the amount of $18,829.53 for costs and attorney's fees. Robinson was held jointly and severally liable for these amounts in addition to fees he had previously been assessed. By order of October 12, 2007, Judge Mixon awarded judgment pursuant to its August 29, 2007 order to Wildlife Farms, Thompson, and Rothwell against Campbell in the amount of $9,652.45 for costs and attorney's fees.  FN9.

> FN9. Lewellen and Campbell filed supplemental notices of appeal of these judgments on November 16, 2007.

On December 5, 2007, Tommy Robinson filed a *pro se* motion seeking permission of the bankruptcy court to file a complaint against Judge Mixon with the Judicial Council of the Eighth Circuit; a complaint with the United States Attorney's Office for the Eastern District of Arkansas asking for a criminal investigation of Thompson, Rothwell, and their counsel, Stuart Hankins; a lawsuit against the trustee in his bankruptcy case for misconduct and breach of fiduciary duties; a lawsuit against Hankins for fraud and malpractice; and a lawsuit against Bill Thompson and Rothwell for fraud. In response to this motion, Thompson and Rothwell filed a motion for civil contempt against Robinson for violating the bankruptcy's court order of July 28, 2006.

The bankruptcy court held a hearing on December 14, 2007 on Robinson's and Thompson's motions. On December 17, 2007, the bankruptcy court issued an order to show cause why Robinson should not be held in criminal contempt for violating its July 28, 2006 order. The bankruptcy court issued an order denying Robinson's motion regarding his request to file lawsuits against the trustee, Hankins, Thompson, and Rothwell on December 19, 2007 finding the motion

frivolous and barred by res judicata. A second order issued that same day dismissed without prejudice the portion of the motion which sought permission to file a complaint with the Judicial Council because such permission was not necessary and dismissed the request for a criminal investigation with the United States Attorney's office based upon lack of jurisdiction. A third order denied Thompson's and Rothwell's motion for civil contempt because the evidence appeared to the court to present a case for criminal contempt.

Robinson filed a notice of appeal of the court's decision regarding his *pro se* motion to file complaints and lawsuits against various parties on December 19, 2007. He failed, however, to designate the record in a timely fashion which led to two motions to dismiss by the appellee and the trustee. Robinson filed his designated record on January 14, 2008.

A hearing was held on January 18, 2008 on the bankruptcy court's order to show cause with Robinson appearing in person and with Lewellen as his attorney. The bankruptcy court issued its order on February 1, 2008, finding Robinson in criminal contempt of its July 28, 2006 order  FN10  and sentenced him to incarceration for a period of two months or such other period of time that this Court should determine upon review of the February 1, 2008 order. Robinson filed objections to that order on February 4, 2008.

> FN10. This second finding of criminal contempt is related to the court's finding on April 17, 2007 that Robinson was in criminal contempt and ordered him incarceration for six months. In the April 17, 2007 order, the bankruptcy court suspended execution of the order as it pertained to incarceration as long as Robinson did not interfere with the administration of any of the bankruptcy estates related to his cases in any manner including assault, battery, threats, and filing frivolous pleadings, motions, and lawsuits.

*In re Robinson*, 2008 WL 1697129 (E.D. Ark. 2008).

Judge Mixon's finding that appellant Tommy Robinson was in criminal contempt and the denial of appellants's discharges were affirmed by this Court.  *See Id.*  Upon appeal to the Court of Appeals for the Eighth Circuit, this Court's decisions in all the appeals described above were affirmed with the exception that the criminal contempt finding against appellant Tommy

Robinson was reversed based upon the vagueness of the July 28, 2006 Order of the Bankruptcy

Court.  *See Lewellen v. Wildlife farms II, LLC,* 557 F.3d 593 (8th Cir. 2009); *In re Robinson,*

342 Fed. Appx. 235 (8th Cir. 2009).

The Eighth Circuit stated in reversing the finding of criminal contempt that

> We first conclude that Tommy Robinson was improperly held in
> criminal contempt of court for violating a bankruptcy court order
> that enjoined him from taking "any actions to interfere in any way
> with the administration of these jointly administered
> bankruptcies," because the bankruptcy court's order was neither
> sufficiently specific to be enforceable, nor clear and unambiguous,
> *see C.H. Robinson Co. v. Medco, Inc. (In re Medlock)*, 406 F.3d
> 1066, 1071 (8th Cir.2005) (individual may not be held in
> contempt for violating order unless order is sufficiently specific to
> be enforceable); *Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d
> 793, 797 (8th Cir.2000) (to support finding of contempt, order in
> question must be clear and unambiguous); and thus it cannot be
> said beyond a reasonable doubt that he knowingly and willfully
> violated the bankruptcy court's order when he filed a separate
> state-court action, much less when he sought permission from the
> bankruptcy court to file other lawsuits, *see Wright v. Nichols*, 80
> F.3d 1248, 1250 (8th Cir.1996) (criminal contempt requires proof
> beyond reasonable doubt that defendant committed knowing and
> willful violation of prior court order); *see also Int'l Union, United
> Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct.
> 2552, 129 L.Ed.2d 642 (1994) (criminal contempt is crime in
> ordinary sense, and criminal penalties may not be imposed on
> someone who has not been afforded protections that Constitution
> requires of such criminal proceedings). We therefore conclude
> that the district court erred in imposing against Tommy Robinson
> the punitive 60-day sentence and the $5,000 fine.

*See Id*.

Based upon the affirmance of the denial of appellants's discharge, writs of garnishment

were issued in state court proceedings on appellees's judgments against appellants.  Appellants

filed a *pro se* "Motion to Squash" [sic], which were later amended by counsel who has now

9

withdrawn from the case. This pleading asserted, as a defense, matters which had previously

been determined to be pre-petition assets of the appellants's estates and which had been settled

by the global settlement for $10,000.00.

Appellees subsequently filed a Motion for an Order of Contempt against appellants in

Bankruptcy Court for violating the Court's July 28, 2006 Order contending appellants were

interfering with the administration of the bankruptcy case by raising these pre-petition settled

claims, once again, in state court.  After a hearing, Judge Mixon denied the Motion for

Contempt discussing briefly the reversal of criminal sanctions by the Eighth Circuit.

Judge Mixon entered an Order dated September 23, 2009, in which he stated that he had

denied the Motion for Contempt.  The Order also stated that the appellants

> "continue to attempt to assert control over a pre-petition cause of action against
> the [appellees].  The cause of action was settled by the [appellants's] Trustee
> over the objection of the [appellants].  The settlement was approved by a final
> Order of the Court on June 8, 2006, from which no appeal was taken.  Further,
> the Trustee executed a release of all pre-petition claims arising out of the claims
> for damages by the [appellants] concerning litigation generally described as the
> Wildlife Farm litigation.  The details of the litigation are described in detail in
> this Court's Order of Contempt entered on April 17, 2007, which is attached
> hereto and made a part of this Order for reference.
>
> In March 2009, the [appellees] filed garnishment proceedings against the
> [appellants's] property in the Circuit Court of Monroe County, Arkansas,
> pursuant to a state court judgment obtained in that court.  In response to the Writ
> of Garnishment, [appellants] again attempted to raise as a defense to the
> garnishment a defense based on the afore mention cause of action settled by the
> [appellants's] Trustee. . ..
>
> The [appellees] allege that such action by the [appellants] constitutes
> interference with the Trustee's settlement, for which the [appellees] paid a
> valuable consideration to the estate. . . .  Therefore, [appellants] are hereby
> Ordered as follows:
>
> 1.  That on or before 14 days from entry of this Order, [appellants] will

dismiss from the Circuit Court of Monroe County, Arkansas, all pleadings asserting the pre-petition Wildlife Farms litigation facts as a defense or right of set-off to the writ of garnishment.

2. That [appellants] and/or anyone acting on their behalf are ordered to forever refrain from and are hereby enjoined from asserting in any pleading or argument in any court or other proceeding any affirmative right or defensive right against Bothwell, Thompson and Wildlife Farms, II, arising out of the facts surrounding the pre-petition Wildlife Farms litigations.

Failure to comply with the provisions of this Order will result in such sanctions as may be authorized by law.

Appellants appeal this Order contending that it (1) is over broad and vague; (2) cannot be enforced based upon federalism and comity as the Bankruptcy Court did not have the jurisdiction to issue such an order; and (3) is in violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and the Arkansas Constitution.

The Court finds that the Order is not over broad as it burdens appellants no more than necessary to be sufficiently specific to be enforceable. Moreover, the Bankruptcy Court has the authority to issue such an order. *See* 11 U.S.C. § 105(a).

Neither appellants's due process rights nor the concepts of federalism and comity have been violated as appellants do not have a property interest in the claims at issue. These claims have previously been determined to be pre-petition assets of the appellants's estates and were settled in the global settlement. *See In re Morgan*, 573 F.3d 615, (8th Cir. 2009) (to establish a due process violation under Fifth Amendment litigant must have protected property interests at stake and be deprived of such property interests without due process of law); *Barnes v. City of Omaha*, 574 F.3d 1003 (8th Cir. 2009) (same under Fourteenth Amendment). Additionally, there is no violation of the Fourteenth Amendment as there is no claim that the state has

deprived appellants of any property. *See Dusenbery v. United States*, 534 U.S. 161, 167, 122

S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits

the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States,

from depriving any person of property without 'due process of law.' ").

To the extent that appellants are arguing that they are being denied access to the courts

under the First Amendment, this claim also fails.

> While the right to access the courts exists, the Supreme Court and our court have
> recognized that the constitutional basis for the right is 'unsettled.' " *Scheeler v.
> City of St. Cloud*, 402 F.3d 826, 830 (8th Cir.2005). In some circumstances, we
> have held that the right to access derives from the First Amendment. *Id*. In order
> to prevail on such a claim, a plaintiff must show that the defendants acted with
> some intentional motivation to restrict his access to the courts. *Id.* The plaintiff
> must show government action was designed to prevent access to the courts. *Id.*

*Morris v. Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008) (citing *Scheeler v. St. Cloud*, 402

F.3d 826, 830 (8th Cir.2005)). Here, the Order does not restrict appellants's access to the

Courts, rather, it restricts their continued use of a claim which does not belong to them.

This Court affirms the Bankruptcy Court's Order of September 23, 2009, and

appellants's appeal is denied. A separate order will be entered consistent with this opinion.

IT IS SO ORDERED THIS __6__ day of _August_, 2010.

_____
James M. Moody
United States District Judge

12